Chris Marshall
10160 Mimosa Silk Drive
Fort Myers, FL 33913
T: (239) 225-6187; F: (239) 225-6189
In pro persona

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Chris Marshall, Plaintiff | ) **Case No.: 13-16552** |
|  | ) **Joan N. Feeney** |
| vs. | ) **United States Bankruptcy Judge** |
|  | ) |
|  | ) **MOTION FOR:** |
| International Cable Corporation | ) **1) SUSPEND AUCTION UNTIL PII OBLIGATIONS** |
| Defendant | )     **HAVE BEEN FULFILLED PROPERLY** |
|  | ) |
|  | ) |

1. Chris Marshall (hereinafter "Plaintiff") former International Cable Corp. (ICC) employee, Motions that the auction scheduled for March 18th & 19th of ICC assets be suspended until proper proof has been provided to the court, that the Personal Identifiable Information (PII) obligation has been fulfilled in a responsible and professional manner. And wishes to make known to the court the carelessness of the parties involved in the International Cable Corporation (hereinafter "Defendant") bankruptcy case, in regard to the protection of PII information of employees, customer and vendors.

2. Personal Identifiable Information (PII) is defined as: Any representation of information that permits the identity of an individual to whom information applies to be reasonably inferred by either direct or indirect means. Further, PII is defined as information: (i) that directly identifies an individual (E.g., name, address, social security number or other identifying number or code, telephone number, email address, etc.) or (ii) by which an agency intends to identify specific individuals in conjunction with other data elements, i.e., indirect identification. (These data elements may include a combination of gender, race, birth date, geographic indicator, and other descriptors). Additionally, information

permitting the physical of online contacting of specific individual is the same as personally identifiable information. This information can be maintained in either paper or electronic or other media.

3. All parties involved with this case have failed in their moral and legal responsibilities to ensure that the PII sensitive information was properly destroyed in a timely manner and fail to take this request seriously. This neglect of their duties puts former ICC employees, customers and vendors at risk..

3. It is the understanding of the plaintiff that a court order was authorized for the PII compliance as part of Doc 80-1,dated 1/23/14, (EXHIBIT A) but the process has not been fulfilled even though $4,527.80 had been allocated, for the exclusive purpose of complying with PI obligations at the Debtor's Miami facility.

4. The Plaintiff made several requests to Jay Pabian's office (Estate Attorney of Jeff Fruman the deceased owner of ICC and acting CEO of ICC) immediately after the estate management team decided to close the business, for these PII document and items to be destroyed. The first request was made in an email dated December 18th 2013 and sent to several members of the Estate and Legal Team (EXHIBIT B). In that email, Plaintiff goes on to mention the discovery of old job applications found in the warehouse which he had office staff shred immediately. He also notes that there are more documents that should be shredded and just to be safe all documents should be shredded. Mark Kornitsky (of Jay Pabian's office) advised Plaintiff during a phone conversation that the estate group was no longer responsible and that the request would have to be handled with the bankruptcy trustee. There was never a written email reply to the Plaintiff's concerns.

5. Marcum Accounts and Advisors, (consultants to the Fruman Estate) were supposed to be experienced in the bankruptcy process and were on site at ICC Miami office to oversee the last hours of operation. They were the ones who hired a lock smith to changed the lock of the business and should have taken care of the PII issue the day the business shut down, but failed.

6. The Plaintiff was in regular communication with Kathleen Dwyer ( Bankruptcy Trustee) and understood that he would take an active part in the process of the shredding of the documents and the destruction of computer hard drives. Plaintiff provided Dwyer with three web site links of business that provide mobile shredding services (EXHIBIT C) But the Plaintiff hasn't received a reply to an email or a returned phone call in over a month and the auction is to begin next week.

7. Plaintiff was made aware that Aaron Posnik & Co would be the auction company for the liquidation (contracted by Webster Bank) and spoke with Paul Scheer (of Aaron Posnik & Co.) on March 5th, 2014 by phone, regarding the status of the documents within the ICC Miami facility. Mr. Scheer advised Plaintiff that there "no longer was as much paperwork in the facility as there once was" and said Aaron Posnik & Co "wasn't being paid to destroy any records or documents".

8. When Plaintiff asked Paul Scheer what would happen to the documents when someone purchased a filing cabinet, he was told it was "the buyers responsibility to dispose of the paperwork".

9. Plaintiff contacted Webster Bank representatives Phil Wells and Scott Smith, by phone on March 5th, 2014, regarding the PII obligations and was told that "it wasn't the banks responsibility" and that their "only concern was to have the assets sold and recoup revenue".

10. Webster Bank representative (Wells & Smith) suggested that they could request the auction company "could remove the files and documents, and place them on the floor during the auction", implying that would safeguard the documents wouldn't leave the building.

11. Plaintiff has made every effort and contacted as many involved individuals of the ICC bankruptcy cast as he could since ICC closed operation and filed Chapter 7 on 12/16/2013. With the auction scheduled for next week, Plaintiff believes there will be no responsible action taken to protect the PII material unless the court orders to postpone the auction, and proof be provided to the court of the proper destruction of PII material.

12. Plaintiff believes Aaron Posnik & Co, Inc may have already mishandled PII information and thrown it in the trash, putting individuals and businesses at risk. And requests that Webster Bank and their contracted auction company fully explain what paperwork was thrown in the trash.

13. Plaintiff understands that the Department of Labor has guidelines that should be followed for the safeguarding of sensitive information by their contractors and believes it is a critical responsibility that must be taken seriously at all times (EXHIBIT D). Noting loss of PII can result in substantial harm to individuals, including identity thefts or other fraudulent use of the information. Plaintiff views the contracting of Posnik & Co as the auction company should be reasonably expected to act under similar guidelines as a responsible contracted business.

14. Plaintiff and all former ICC employees have suffered enough already after losing their jobs the week before Christmas of last year. And for them to be exposed to potentially additional harm in the way of identity left is beyond irresponsible on the part of all those involved in the ICC case.

15. Plaintiff requests that Webster Bank and their appointed auction company Aaron Posnik & Co fully explain to the court what documents and records they disposed of and how they were disposed. And that they be held accountable for any mishandling of PII material, along with all of those who failed to act when they were able to take action.

16. In Public Law 93-579, enacted in 1974 as the Privacy Act, Congress found that the right to privacy is a personal and fundamental right protected by the Constitution of the United States. The need for this information privacy includes employees, job applicants, customers, vendors and all business contacts. At least five federal laws restrict the use or disclosure of SSN including the Fair Credit Reporting Act, the Fair and Accurate Credit Transaction Act, the Graham-Leach-Bliley Act, the Drivers Privacy Protection Act, and the Health Insurance Portability and Accountability Act. Yet those involved in this case don't seem to take the Plaintiff's PII concerns seriously and continue to procrastinate in fulfilling the court order or show concern to safeguard the former employees, customers and vendors PII data.

17. Plaintiff requests that he and David Rasmussen (former ICC CTO) be on site, as originally discussed with Dwyer, to participate in the shredding of any remaining PII paperwork and destruction of computer hard drives.

18. This process should have been accomplished months ago and although Dwyer is now the responsible party to oversee the process, all others could have seen to this issue but failed. There are too many people and businesses that are at risk of PII harm and the shredding of the documents and destruction of hard drives shouldn't be rushed. The responsible act in safeguarding those at risk, is to postpone the auction until the PII obligation is done properly and proof is provided to the court.

DATED: March 11, 2014                    RESPECTFULLY SUBMITTED,

                                         By: *Chris Marshall*
                                         Chris Marshall
                                         Plaintiff in Pro Persona

"Exhibit A"

4. The Trustee shall turn over to Webster Bank the entire amount ($188,635.40) formerly in the RBS Citizens, N.A. account, and now deposited in the Trustee's Rabobank, N.A. account.

5. The Trustee may use the funds formerly in the Debtor's Webster Bank account ($4,527.80) ("WB Funds") and now in the Trustee's Rabobank, N.A. account, for the exclusive purpose of complying with PII obligations at the Debtor's Miami facility. Any remaining WB Funds, net of bank service fees, not used for PII compliance are to be paid over to Webster Bank, National Association.

5. It is further ordered that Rule 4001(a)(3) is not applicable, and that this Order is effective immediately upon entry on the docket.

                                                        Joan N. Feeney
                                                       United States Bankruptcy Judge

DATED: January ___, 2014

Mar 11 14 08:05a    chris marshall    6145231744    p.5
Case 13-16552   Doc 86   Filed 03/11/14   Entered 03/11/14 12:47:50   Desc Main
                        Document     Page 6 of 12

Case 13-16552   Doc 80-1   Filed 01/23/14   Entered 01/23/14 16:07:35   Desc Proposed
                           Order    Page 1 of 2

"Exhibit A"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: ) | |
| ) | |
| INTERNATIONAL CABLE CORPORATION, ) | Chapter 7 |
| ) | Case No. 13-16552 |
| Debtor ) | |
| ) | |

## AGREED ORDER

Webster Bank, National Association, ("Webster Bank"), a secured creditor in the above-captioned case, having filed its Motion for Relief from the Automatic Stay so that it may exercise its rights as a secured creditor under a Commercial Demand Note and Business Credit Line Agreement, Security Agreement and UCC Financing Statement, and for Turnover of Personal Property collateral, and the Chapter 7 Trustee having filed a limited objection thereto, and no other objections to the Webster Bank Motion having been filed, and the objection raised by the Trustee having been addressed herein to the satisfaction of the parties, and sufficient cause appearing therefore:

## IT IS ORDERED

1. Except as set forth the in paragraph 2 of this Order, the Motion for Relief from the Automatic Stay and for Turnover of Personal Property with respect to the assets of the Debtor which are the collateral of Webster Bank, is hereby granted.

2. Relief from stay as to the Debtor's 2006 Toyota Tundra and 2008 Range Rover is denied, Webster Bank's security interest therein being unperfected.

3. The Trustee shall cooperate with Webster Bank in accomplishing the turnover of the Bank's collateral but shall not be required to incur expenses in connection with the turnover.

"Exhibit B"

# Chris Marshall

| | |
|---|---|
| From: | Chris Marshall [cmarshall@internationalcable.tv] |
| Sent: | Wednesday, December 18, 2013 10:14 AM |
| To: | 'Marc Kornitsky'; 'Neil D. Warrenbrand'; 'Jay Pabian'; 'joe bodoff'; 'Todd Kamens' |
| Cc: | 'Larry'; 'Joanne Lunn' |
| Subject: | RE: Busiiness |

I feel compelled to tell you a little something about the people in Miami that lost their jobs the week before Christmas.

Vanessa - just had a baby a few months ago and works to help support her family
Marily - is pregnant and due in Feb and works to help support her family and takes night classes
Nathalie - a single mother and takes night classes
Dave - recently legally adopted his grandson and supports his family, as well as cares for two other grand children
Warehouse Staff of Nika, Alain, Lazao and Christopher - all live pay check to pay check and support their families

I know where the numbers are, as I was the only one producing sales, as well as working in the warehouse trying to clean up and organize. But the way the shut down happened sickens me. The fact that it happens the week before Christmas is disgusting! Merry Christmas to the people that were on the front line "trying". Many things have been drug out for months and the decision to close and kick the people out, happened to "us" within an hour. This could have waited until after Christmas - really, it could have waited.

There was obviously no thought put into closing the doors. What about the business we were doing? There are shipments on trucks to be delivered to us and material at locations to be picked up. RMA's, warranty and repair orders as well. What happens to those? It was ridiculous to close the doors, without wrapping things up. No, it was stupid! What about the shipments that were planned and being worked on? Will they be invoiced? Where are you getting the details for the shipments? There is OPEN business that should have been cleaned up in a professional manner, yet I get a phone call we are closing down and 5 minutes later as I am talking with the staff a locksmith pulls up to change the lock. VERY CLASSY!

Again, no thought put into anything. Who is going to make sure all personal records are destroyed? As I was working in the warehouse I discovered two boxes of old employment applications that listed social security numbers. Edmerson and his crew were a bunch of idiots for handling the information in this manner, and I am sure there is a lot more personal and business paperwork that needs to be shredded up and not just thrown in a dumpster. Actually ALL paperwork should be shredded, just to be safe. And don't worry about the two boxes I mentioned earlier, as I had that information shredded immediately by Nathalie and Marily.

And who's bright idea was it to power everything off? Dave explained to Elliot (from Marcum) that the AC and power to the headend should not be turned off due to potential problems with the equipment, yet it was all shut down at once. Those items should have been powered down item by item and not all at once. And the server and accounting computers were shut down - good idea.

For the last 5 months I have worked my ass off to trying to keep ICC going. This is not how it should have ended.

Please do everything in your power (and more if required) to ensure everyone receives their full compensation due them, sooner than later.

Thanks

Chris Marshall
Vice President of Sales
International Cable

1

"Exhibit C"

## Chris Marshall

**Subject:** FW: mobile shredding services

**From:** Chris Marshall [mailto:cjm.mbb@gmail.com]
**Sent:** Monday, February 24, 2014 4:34 PM
**To:** 'Kathleen P. Dwyer'
**Subject:** RE: mobile shredding services

?

Chris Marshall
Marshall Broadband
Office 239-225-6187
Cell 614-975-8356

**From:** Chris Marshall [mailto:cjm.mbb@gmail.com]
**Sent:** Friday, February 21, 2014 12:37 PM
**To:** 'Kathleen P. Dwyer'
**Subject:** RE: mobile shredding services

Where do we stand on this? Any chance I can get in there to do this next week?

Chris Marshall
Office 239-225-6187
Cell 614-975-8356

**From:** Chris Marshall [mailto:cjm.mbb@gmail.com]
**Sent:** Tuesday, February 18, 2014 6:18 PM
**To:** 'Kathleen P. Dwyer'
**Subject:** RE: mobile shredding services
**Importance:** High

Where do we stand on this? I understand from Ray Pelote that there is going to be a sale on March 19th. We are running out of time. If the bank has had people in the warehouse staging the inventory and office material - what did they do with the personal documents?

Let's pick a day and get this done asap.

Chris Marshall
Office 239-225-6187
Cell 614-975-8356

**From:** Chris Marshall [mailto:cjm.mbb@gmail.com]
**Sent:** Friday, February 07, 2014 1:22 PM
**To:** 'Kathleen P. Dwyer'
**Subject:** RE: mobile shredding services

I can't provide that information until we get inside and gather the documents and separate what should be shredded and what can be trash.

1

"Exhibit C"

For an estimate for now, I'd tell them 500 - 1000 pounds of paper and 10 hard drives. This is just a guess.

The best way to handle this (I think) is to get in there and do the work, stage the material to be destroyed, and then coordinate to have the shredding company come to the facility.

Chris Marshall
Marshall Broadband
Office 239-225-6187
Cell 614-975-8356

**From:** Kathleen P. Dwyer [mailto:Kdwyer@mhdpc.com]
**Sent:** Friday, February 07, 2014 1:10 PM
**To:** Chris Marshall
**Subject:** RE: mobile shredding services

Chris,
Three shredding companies have been contacted.
Each wants info on volume of paper and number of drives.
before giving me a quote.
Can you provide that info?
Kathy

**From:** Chris Marshall [mailto:cjm.mbb@gmail.com]
**Sent:** Friday, February 07, 2014 11:57 AM
**To:** Kathleen P. Dwyer
**Subject:** RE: mobile shredding services

Kathleen

Ay idea when we can schedule to get this done? Maybe next week?

Chris Marshall
JFK Communications
JT Electronics
33 Wales Ave, Unit G
Avon, MA 02322
6320 NW 84th Ave
Miami, FL 33166
Marshall Broadband
Office 239-225-6187
Cell 614-975-8356

**From:** Chris Marshall [mailto:cjm.mbb@gmail.com]
**Sent:** Tuesday, January 21, 2014 2:24 PM
**To:** 'kdwyer@mhdpc.com'
**Subject:** mobile shredding services

Here are three links for mobile shredding services I found on-line in the Miami area. The computer hard drives will also need to be destroyed.

http://www.fl-shred.com/

http://microshred.com/

http://www.miamipapershredding.com/mobi

Chris Marshall
Office 239-225-6187
Cell 614-975-8356

"Exhibit O"

# Guidance on the Protection of Personal Identifiable Information

Personal Identifiable Information (PII) is defined as:

> Any representation of information that permits the identity of an individual to whom the information applies to be reasonably inferred by either direct or indirect means. Further, PII is defined as information: (i) that directly identifies an individual (e.g., name, address, social security number or other identifying number or code, telephone number, email address, etc.) or (ii) by which an agency intends to identify specific individuals in conjunction with other data elements, i.e., indirect identification. (These data elements may include a combination of gender, race, birth date, geographic indicator, and other descriptors). Additionally, information permitting the physical or online contacting of a specific individual is the same as personally identifiable information. This information can be maintained in either paper, electronic or other media.

Department of Labor (DOL) contractors are reminded that safeguarding sensitive information is a critical responsibility that must be taken seriously at all times. DOL internal policy specifies the following security policies for the protection of PII and other sensitive data:

> It is the responsibility of the individual user to protect data to which they have access. Users must adhere to the rules of behavior defined in applicable Systems Security Plans, DOL and agency guidance.
>
> DOL contractors having access to personal information shall respect the confidentiality of such information, and refrain from any conduct that would indicate a careless or negligent attitude toward such information. Contract employees also shall avoid office gossip and should not permit any unauthorized viewing of records contained in a DOL system of records. Only individuals who have a "need to know" in their official capacity shall have access to such systems of records.

The loss of PII can result in substantial harm to individuals, including identity theft or other fraudulent use of the information. Because DOL employees and contractors may have access to personal identifiable information concerning individuals and other sensitive data, we have a special responsibility to protect that information from loss and misuse.

With these responsibilities contractors should ensure that their employees:

> Safeguard DOL information to which their employees have access at all times.
>
> Obtain DOL management's **written** approval prior to taking any DOL sensitive information away from the office. The DOL manager's approval must identify the business necessity for removing such information from the DOL facility.

"Exhibit D"

When approval is granted to take sensitive information away from the office, the employee must adhere to the security policies described above.

Contractors should ensure their contract employees are aware of their responsibilities regarding the protection of PII at the Department of Labor. In addition to the forgoing, if contract employees become aware of a theft or loss of PII, they are required to **immediately** inform their DOL contract manager. In the event their DOL contract manager is not available, they are to **immediately** report the theft or loss to the DOL Computer Security Incident Response Capability (CSIRC) team at dolcsirc@dol.gov